No. 25-30135

# In the United States Court of Appeals for the Fifth Circuit

**Ternell L. Brown**
*Plaintiff-Appellee*

v.

**Matthew Wallace, in his individual capacity; Katherine Alvarado; Troy Lawrence, Jr., in his individual capacity**
*Defendants-Appellants*

On Appeal from the United States District Court
for the Middle District of Louisiana
Civil Action No. 23-CV-1313

**BRIEF OF APPELLANT,
MATTHEW WALLACE**

**Chase Tettleton** (32721)
**Stephen Babcock** (26792)
BABCOCK PARTNERS, LLC
10101 Siegen Lane, Bldg. 3C
Baton Rouge, LA  70810
(225) 344-0911
(225) 761-9088 (fax)
*ct@stephenbabcock.com*

ATTORNEYS FOR APPELLANT, MATTHEW WALLACE

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellee: | Counsel for Appellee: |
| --- | --- |
| Ternell Brown | 1. Ryan Thompson (Baton Rouge, LA); 2. Jessica Hawkins (Baton Rouge, LA); and 3. Rodney S. Diggs of Ivie McNeill Wyatt Purcell & Diggs, APLC (Los Angeles, CA) |

| Appellants: | Counsel for Appellants: |
| --- | --- |
| Katherine Alvarado | John Thomas, Alejandro Perkins, and Marissa Batiste of Hammonds, Sills, Adkins, Guice, Noah & Perkins, L.L.P. (Baton Rouge, LA) |
| Troy Lawrence | Brian Blackwell and James Bullman of Blackwell & Bullman, L.L.C. (Baton Rouge, LA) |
| Matthew Wallace | Chase Tettleton, Stephen Babcock, and Adrian Smith of Babcock Partners, L.L.C. (Baton Rouge, LA) |

| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| Murphy Paul, in his individual and official capacities (former Chief of the Baton Rouge Police Department and defendant below, recently dismissed without prejudice) | Michael S. Walsh and Grant Willis of Taylor Porter, Brooks & Phillips (Baton Rouge, LA) |
| City of Baton Rouge-Parish of East Baton Rouge (defendant below) | Michael Schillage and Kenneth M. Willis of the Office of the East Baton Rouge Parish Attorney |

**/s/ Chase Tettleton**

_____

**Chase Tettleton** (32721)
**BABCOCK PARTNERS, LLC**
ATTORNEYS FOR MATTHEW WALLACE

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 5th Cir. R. 28.2.3 and FED. R. APP. P. 34(a)(1), Appellant Matthew Wallace respectfully requests oral argument. This appeal raises important questions about qualified immunity at the pleading stage, in the absence of clearly established Fourth Amendment law.

# TABLE OF CONTENTS

Certificate of Interested Persons ............................................... ii

Statement Regarding Oral Argument ...................................... iv

Table of Contents .................................................................. v

Table of Authorities ............................................................ vii

Jurisdictional Statement ........................................................ 1

Statement of the Issues ......................................................... 2

Statement of the Case ........................................................... 3

Summary of the Argument .................................................... 5

Argument ............................................................................... 6

I.    Standard of Review ...................................................... 6

      A.    This Court reviews the district court's ruling on a
            motion to dismiss de novo. ................................... 6

      B.    Qualified immunity applies unless clearly established
            law prohibited the officer's conduct. ..................... 7

II.   Detective Wallace had probable cause to arrest Brown, and
      no clearly established law barred it. ........................... 10

      A.    Brown's allegations show probable cause for illegal
            drug possession under Louisiana law. ................. 10

            1.    She admitted to carrying mixed pills without
                  proof of prescriptions. ............................... 10

            2.    Louisiana law places the burden of proving a
                  valid prescription on the defendant. ............ 16

B.    No precedent clearly establishes that an arrest under these circumstances is unconstitutional. .............................. 20

    1.    There is no controlling case prohibiting an arrest under similar facts. ......................................... 21

    2.    There is no robust consensus of persuasive authority holding otherwise...................................... 22

**III.    Brown was lawfully in custody when the search occurred, and no clearly established law prohibited Wallace from ordering it.** ................................................................. 25

A.    Brown's own allegations confirm she was under arrest and in full custodial detention................................... 25

B.    Instructing another officer to conduct a strip search in custody does not violate clearly established law. ............. 27

C.    Courts have upheld similar searches under Florence, and no precedent clearly prohibits this one. ....................... 29

**Conclusion** ......................................................................... 32

**Certificate of Service**............................................................ 34

**Certificate of Compliance** .................................................... 35

## <u>TABLE OF AUTHORITIES</u>

### Constitutional Provisions

U.S. Const. amend. IV .......................................................... *passim*

### Statutes and Rules

#### *United States Code*

**Title 28**
  Section 1292 ..................................................................... 1

**Title 42**
  Section 1983 .................................................... 4, 15, 28, 31

#### *Fifth Circuit Rules*

Rule 28.2.1 ............................................................................ ii
Rule 28.2.3 ........................................................................... iv

#### *Federal Rules of Appellate Procedure*

Rule 34(a)(1) ....................................................................... iv

#### *Federal Rules of Civil Procedure*

Rule 12(b)(6) ........................................................................ 6

#### *Louisiana Revised Statutes*

**Title 14**
  Section 95(E) ............................................................. 11, 30
**Title 32**
  Section 300(A) ................................................................ 11

**Title 40**

Section 961 ................................................................ 12
Section 963 ................................................................ 17
Section 967 ................................................... 13, 17, 29
Section 968 ................................................... 13, 17, 29
Section 969 ...................................... 13, 17, 18, 24, 29
Section 991 ........................................... 13, 14, 18
Section 1060.13 ..................................... 17

*Louisiana Code of Criminal Procedure*

Article 201 ........................................................ 25

# Cases

*Anderson v. Estrada,*
    140 F.4th 634 (5th Cir. 2025) .......................... 6

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011) ................... 8, 9, 20, 21, 32

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................ 6

*Backe v. LeBlanc,*
    691 F.3d 645 (5th Cir. 2012) .......................... 7

*Behrens v. Pelletier,*
    516 U.S. 299 (1996) ........................................ 7

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................ 6

*Brosseau v. Haugen,*
    543 U.S. 194 (2004) ........................................ 9

*Budget Charters, Inc. v. Pitts*,
No. 3:17-cv-722, 2018 WL 6181345
(M.D. Tenn. Nov. 27, 2018) ............................................................ 15

*Crittindon v. LeBlanc*,
37 F.4th 177 (5th Cir. 2022) ............................................................ 8

*D.C. v. Wesby*,
583 U.S. 48 (2018) ...................................................................... 9, 20

*Florence v. Board of Chosen Freeholders*,
566 U.S. 318 (2012) ................................................ 26, 29, 30, 32

*Garcia v. Escalante*,
678 Fed.Appx. 649 (10th Cir. 2017) .................................... 15

*Gonzalez v. City of Schenectady*,
728 F.3d 149 (2d Cir. 2013) .......................................... 30, 31

*Guerra v. Castillo*,
82 F.4th 278 (5th Cir. 2023) ............................................ 7

*Hicks v. LeBlanc*,
81 F.4th 497 (5th Cir. 2023) .......................................... 22

*Hodge v. Engleman*,
90 F.4th 840 (5th Cir. 2024) ............................................ 6

*Hope v. Pelzer*,
536 U.S. 730 (2002) .......................................................... 32

*Illinois v. Gates*,
462 U.S. 213 (1983) .......................................................... 20

*James v. Texas Collin County*,
535 F.3d 365 (5th Cir. 2008) ........................................ 28

*Kinney v. Weaver*,
367 F.3d 337 (5th Cir. 2004) ........................................ 22

*Mabry v. Lee County,*
   849 F.3d 232 (5th Cir. 2017) ........................................................ 27

*Maryland v. Pringle,*
   540 U.S. 366 (2003) ..................................................................... 21

*Mason v. Faul,*
   929 F.3d 762 (5th Cir. 2019) .......................................................... 9

*McClendon v. City of Columbia,*
   305 F.3d 314 (5th Cir. 2002) ........................................................... 6

*Minnesota v. Dickerson,*
   508 U.S. 366 (1993) ..................................................................... 26

*Mitchell v. Forsyth,*
   472 U.S. 511 (1985) ....................................................................... 1

*Morgan v. Swanson,*
   659 F.3d 359 (5th Cir. 2011) ........................................................... 8

*Pearson v. Callahan,*
   555 U.S. 223 (2009) ....................................................................... 8

*Plumhoff v. Rickard,*
   572 U.S. 765 (2014) ..................................................................... 21

*Presley v. City of Benbrook,*
   4 F.3d 405 (5th Cir. 1993) ............................................................ 23

*Roddy v. City of Huntsville, Ala.,*
   580 Fed.Appx. 844 (11th Cir. 2014) ............................................. 15

*Safford Unified Sch. Dist. No. 1 v. Redding,*
   557 U.S. 364 (2009) ..................................................................... 30

*Sligh v. City of Conroe, Texas,*
   87 F.4th 290 (5th Cir. 2023) ......................................................... 12

*Snyder v. Trepagnier*,
    142 F.3d 791 (5th Cir. 1998) ........................................................ 28

*State v. Collins*,
    97-2425 (La. App. 4 Cir. 10/21/1998), 721 So.2d 503 ..................... 24

*State v. Daniels*,
    614 So.2d 97 (La. App. 2 Cir. 1993) ............................................... 14

*State v. Hilsher*,
    2011-1981 (La. App. 1 Cir. 5/2/12); 2012 WL 1552269 ................. 19

*State v. Rodriguez*,
    554 So.2d 269 (La. App. 3d Cir. 1989) ........................................... 19

*State v. Ruth*,
    2013-1547 (La. App. 4 Cir. 8/6/14), 147 So.3d 1177 ................ *passim*

*State v. Williams*,
    2012-0110 (La. App. 4 Cir. 10/10/12); 101 So.3d 533 .................... 19

*Terry v. Ohio*,
    392 U.S. 1 (1968) .......................................................................... 26

*Thorn v. McGary*,
    684 Fed. Appx. 430 (5th Cir. 2017) ............................................... 24

*United States v. Barnes*,
    506 F.3d 58 (1st Cir. 2007) ........................................................... 31

*United States v. Richardson*,
    No. CR 16-68-JJB-EWD, 2017 WL 1416816
    (M.D. La. Apr. 19, 2017) ............................................................... 24

*Vassiliou v. City of New York*,
    18-CV-0779(EK)(VMS), 2021 WL 76916
    (E.D.N.Y. Jan. 7, 2021) ................................................................. 15

*White v. Pauly*,
    580 U.S. 73 (2017) .............................................................. 21

*Wilson v. Layne*,
    526 U.S. 603 (1999) ........................................................... 23

*Woods v. Butler*,
    847 F.2d 1163 (5th Cir. 1988) ................................... 18, 19

*Zadeh v. Robinson*,
    902 F.3d 483 (5th Cir. 2018) ............................................ 8

*Zapata v. Melson*,
    750 F.3d 481 (5th Cir. 2014) ............................................ 7

## Other Authorities

Friedman, *Qualified Immunity in the Fifth Circuit*,
    90 Tex. L. Rev. 1283 (2012) ........................................... 8

# JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1) and the collateral order doctrine. The district court denied Matthew Wallace's motion to dismiss based on qualified immunity, a ruling that is immediately appealable.[1]

Wallace timely appealed by filing his notice of appeal within 30 days of the district court's order of February 19, 2025.[2]

---

[1]   ROA.945–953 ("Ruling and Order on Wallace's Motion to Dismiss"); *Mitchell v. Forsyth*, 472 U.S. 511 (1985).

[2]   ROA.968–69.

## STATEMENT OF THE ISSUES

This appeal presents two independent but related issues:

1.  Whether Detective Matthew Wallace is entitled to qualified immunity for arresting Plaintiff based on her possession of a firearm in the presence of prescription drugs without documentation or original pharmacy labels, where the complaint disputes probable cause but its allegations support it and fail to show a violation of clearly established law.

2.  Whether Wallace is entitled to qualified immunity for allegedly instructing a female officer to conduct a visual strip search of Plaintiff following a custodial arrest, where no clearly established law prohibited such a search in those circumstances.

## STATEMENT OF THE CASE

This case involves a routine traffic stop that escalated into an arrest for the unlawful possession of controlled substances in the presence of a firearm. On June 10, 2023, Detective Matthew Wallace of the Baton Rouge Police Department stopped Ternell Brown and her husband on Plank Road. ROA.671 [¶¶ 5-8]. As alleged in the complaint, after making initial contact, Wallace ordered both occupants out of the vehicle and conducted a lawful search. ROA.671 [¶¶ 10-16]. Inside Brown's purse, he found several prescription medications stored in multiple bottles and a gun. ROA.671 [¶¶ 16-21]. Brown did not have prescription documentation or bottles with the original pharmacy labels with her. ROA.672 [¶¶ 18-21].

Brown was arrested and transported to a BRPD facility for further investigation and processing. ROA.672 [¶¶ 21-23]. While in custody, Wallace allegedly directed a female officer to conduct a visual strip search of Brown in a partitioned area of the facility. ROA.673 [¶ 31]; ROA.703 [¶ 175]. The complaint does not claim Wallace was present, that he conducted the search himself, or that it involved any physical contact.

Brown later filed suit under 42 U.S.C. § 1983, claiming the arrest and strip search violated her Fourth Amendment rights. ROA.667–707.[3] Wallace moved to dismiss on qualified immunity grounds. ROA.712–725. The district court denied the motion, concluding that because Brown asserted she had valid prescriptions, Wallace should have accepted her representation at face value. ROA.945–953. This appeal followed.

---

[3]    All citations to "the complaint" refer to the Second Amended Complaint, which is the operative pleading in this case.

## SUMMARY OF THE ARGUMENT

The district court erred in denying Detective Wallace qualified immunity. Brown's complaint fails to allege any violation of clearly established Fourth Amendment law, either for her arrest or for the subsequent strip search conducted by a female officer.

*First*, Wallace had probable cause to arrest Brown. He lawfully stopped her vehicle, lawfully searched it, and discovered multiple prescription medications, without the pharmacy labels or prescriptions, in her purse next to a firearm. Louisiana law criminalizes this exact conduct. Even if Brown later offered some evidence to support her claim that the pills were lawfully prescribed, nothing she provided at the scene conclusively established that fact, and no clearly established precedent required Wallace to treat her roadside explanations or assurances as definitive proof of lawful possession.

*Second*, the post-arrest visual strip search of Brown in a custodial setting did not violate clearly established law. Brown was already under arrest when the search occurred. Several courts, including the Supreme Court, have held that searches of this kind are constitutionally permissible under similar circumstances.

Because the complaint rests on speculative and novel theories of Fourth Amendment law, Wallace is entitled to qualified immunity. This Court should reverse the district court's ruling and dismiss the claims against him.

## ARGUMENT

### I.    Standard of Review

#### A.    This Court reviews the district court's ruling on a motion to dismiss de novo.

This court reviews *de novo* the district court's denial of a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Anderson v. Estrada*, 140 F.4th 634, 641 (5th Cir. 2025). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although courts "accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024).

When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, it is the defendant's conduct as alleged in the complaint that is scrutinized for "objective legal reasonableness." *McClendon v. City of*

*Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (per curiam) (en banc) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Put another way, a court must determine that the plaintiff's pleadings "assert facts which, if true, would overcome the defense of qualified immunity." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014).

**B.     Qualified immunity applies unless clearly established law prohibited the officer's conduct.**

Detective Wallace is entitled to qualified immunity unless Brown can show that his actions violated a constitutional right that was clearly established at the time. Even assuming her arrest and search were unconstitutional (they were not), qualified immunity shields public officials from liability unless their conduct violated a right so clearly defined that any reasonable officer would have known it was unlawful. *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023).

Courts apply a two-pronged analysis to determine whether a government official is entitled to qualified immunity, inquiring: (1) whether

the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To overcome Wallace's qualified immunity defense, Brown must do more than allege a constitutional violation – she must show that the right in question was clearly established at the time of the alleged misconduct. *Id. at* 232. That requires pointing to controlling authority or a robust consensus of persuasive precedent that defines the legal contours of the right with a high degree of specificity. *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc). While a case directly on point is not required, the existing precedent must have placed the constitutional question "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); see also *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022).

The deference to government actors is by design.[4] Qualified immunity gives government officials breathing room to make reasonable but mistaken

---

[4]    The aims and effects of qualified immunity have drawn pointed criticism from both scholars and jurists. See Friedman, *Qualified Immunity in the Fifth Circuit*, 90 Tex. L. Rev. 1283, 1295–1305 (2012) (observing that the Fifth Circuit often requires "virtually identical" precedent to defeat immunity); *Zadeh v. Robinson*, 928 F.3d 457, 479 (5th Cir. 2019) (Willett, J., concurring *dubitante*) ("To some observers, qualified immunity smacks of unqualified impunity, letting public officials duck consequences for bad behavior—no matter how palpably unreasonable—as long as they were the *first* to

judgments about open legal questions. *al-Kidd*, 563 U.S. at 743. It likewise "shields an officer from suit when [the officer] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [the officer] confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). In short, "[w]hen properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743.

Consequently, "[q]ualified immunity is justified unless no reasonable officer could have acted as [the defendant officer] did here, or every reasonable officer faced with the same facts would not have [acted as the defendant officer did]." *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019); *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) ("The clearly established standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him.") Courts applying this standard consistently describe it as a demanding threshold, and one that intentionally favors immunity in all but the most egregious or plainly unlawful cases.

---

behave badly.") Judge Willett's opinion reflects an emerging concern that the doctrine insulates plainly wrongful conduct absent a factually indistinguishable case. Respectfully, this case does not present "plainly wrongful conduct" by the police.

## II. Detective Wallace had probable cause to arrest Brown, and no clearly established law barred it.

Brown's own allegations justify her arrest. Far from alleging a constitutional violation, they confirm that Detective Wallace had probable cause, and that no clearly established law prohibited her arrest under the circumstances.

### A. Brown's allegations show probable cause for illegal drug possession under Louisiana law.

The complaint admits facts that support probable cause to arrest Brown for unlawful possession of prescription medication in the presence of a firearm under Louisiana law.

### 1. She admitted to carrying mixed pills without proof of prescriptions.

The Second Amended Complaint ("SAC") confirms that during a lawful search, Officer Wallace discovered several prescription medications, some commingled in a single container, in the same purse as a semiautomatic pistol. Brown did not present any valid prescriptions or original pill bottles at the scene. By her own pleading, she describes the circumstances that gave Wallace probable cause to arrest her.

Brown alleges that she and her husband were ordered out of the car, and that Wallace "searched the vehicle without Mrs. Brown or her husband's consent or a warrant." ROA.671 [¶¶ 10–14]. However, she does not claim that Wallace lacked probable cause to conduct the search, nor does she describe any facts that would preclude such a finding.[5] During the search, Wallace "discovered several bottles of prescription medication belonging to Mrs. Brown." ROA.671 [¶ 16]. Although Brown did not have her prescriptions or pharmacy-labeled containers, she told Wallace that "she was in lawful possession of the pills as they had been prescribed to her." ROA.671 [¶ 17]. According to Brown, Wallace then informed her that she was being arrested for possessing a firearm in the presence of a controlled dangerous substance. ROA.672 [¶ 21].[6] On that basis, she was transported to the BRPD processing facility while officers continued investigating whether a drug offense had occurred. ROA.672 [¶¶ 21–23].

---

[5]  While expressly denying consent or warrant, the SAC is conspicuously silent as to whether Wallace had probable cause to search the vehicle. For example, it omits any mention of an open container of alcohol or other contraband in plain view, facts that, if alleged, could have supported the lawfulness of the search. *See* La. R.S. 32:300(A). Wallace respectfully submits that Brown's omission of such context is telling.

[6]  Brown alleges that Wallace informed her she was being arrested "for possession of a controlled firearm with a CDS," a reference to the TEC-9-style semi-automatic pistol she had in her purse. ROA.672 [¶ 21]. A "controlled firearm" is a misnomer, as Brown's possession of the firearm itself was apparently lawful. Presumably, Brown means Wallace told her she was being arrested for possessing a firearm with a controlled dangerous substance, a "CDS," in violation of La. R.S. 14:95(E).

Confining the analysis to the four corners of the SAC, Brown alleges conduct that justified her arrest under Louisiana law.[7] Brown admits she had "several bottles of prescription medication" and "different prescription medicines in the same pill container" without immediate access to the prescriptions themselves. ROA.671–72 [¶¶ 16-21]. Brown never identified what the medications were, but assuming they were "prescription," they were either a "controlled dangerous substance" or a "legend drug."

La. R.S. 40:961 defines both:

(8)     "Controlled dangerous substance" means any substance defined, enumerated, or included in federal or state statute or regulations, 21 CFR 1308.11 through 1308.15 or R.S. 40:964, or any substance which may hereafter be designated as a controlled dangerous substance by amendment of supplementation of such regulations or statute.

\* \* \*

(25)    "Legend drug" means any drug or drug product bearing on the label of the manufacturer or distributor, as required by the federal Food and Drug Administration, the statement "Caution: Federal law prohibits dispensing without prescription".

---

[7]    The SAC is an incomplete description of the roadside interaction between Brown and Wallace. Thankfully, this portion of their exchange was captured by Wallace's body-worn camera. Even though there is some authority that would arguably allow the consideration of the BWC video even at the motion to dismiss stage, see *Sligh v. City of Conroe, Texas*, 87 F.4th 290, 297–98 (5th Cir. 2023), Wallace restricted his argument at the district court to the four corners of the SAC.

Brown admits that she was carrying several bottles of prescription medication, including different prescription pills in the same container. ROA.671–72 [¶¶ 16-21]. In her argument to the court below, Brown did not dispute that the various pills were scheduled drugs and thus covered by La. R.S. 40:967 through 969. ROA.773–75. Instead, she argued that Wallace violated her constitutional rights because he would not accept her pleas to provide unspecified roadside evidence of her lawful possession. ROA.774.

Brown alleges she told the officers several times that she had been prescribed the pills in her possession "and offered to show proof of this fact." ROA.671 [¶ 17]. She also alleges that the officers "ignored Mrs. Brown's efforts to demonstrate she had prescriptions for the pills." ROA.671–72 [¶ 18]. She does not allege *how* she intended to prove the fact or *the form* the evidence would take, but significantly, Brown does *not* allege she offered to provide the prescriptions or the original pharmacy-labeled bottles for each medicine. The Court can reasonably infer that Brown did not have such documentation in her possession when arrested.

The district court erred in finding a constitutional violation where none exists. Detective Wallace followed Louisiana law. Under La. R.S. 40:991(A), a person claiming to lawfully possess a controlled substance bears the burden of producing proof of a valid prescription. The statute even specifies what

qualifies as sufficient proof: "Production of the original prescription bottle with the defendant's name, the pharmacist's name, and prescription number." *Id*. Brown alleges only that she told officers she had prescriptions for the pills and "offered to show proof," but she does not allege *what* that proof was, nor that she *actually possessed* prescription bottles or written prescriptions at the scene. In fact, she admits the pills were mixed in a single container, making it unlikely she had any labeled bottles with her. On these facts, Wallace had no legal obligation to accept Brown's assurances at face value, and probable cause existed as a matter of law.

Brown's allegations confirm Wallace is entitled to qualified immunity. When he found multiple prescription drugs mixed in a single bottle in the same purse that contained a semiautomatic assault pistol, Wallace had reason to suspect Brown was engaged in the illegal drug trade. After all, pill bottles are common containers for street-level drug dealers. See e.g., *State v. Daniels*, 614 So.2d 97, 112 (La. App. 2 Cir. 1993), *writ denied*, 619 So.2d 573 (La. 1993) (noting expert testimony that people who sell drugs on the street carry them in a matchbox or a pill bottle and that pill bottles are very common containers for street-level sales). The questionable circumstances were clearly front and center when Wallace told Brown: "We don't know if it's something you bought off the streets, or what?" ROA.672 [¶ 22]. Brown herself

acknowledges that these suspicions were why she was "transported," *i.e.*, arrested. ROA.672–73 [¶ 25].

Wallace had probable cause to believe Brown possessed a controlled substance, and that is enough to provide him with qualified immunity against Brown's unreasonable seizure claim. See *Roddy v. City of Huntsville, Ala.*, 580 Fed.Appx. 844, 851 (11th Cir. 2014) (affording qualified immunity against an unreasonable seizure claim because the arrest for unlawful possession was supported by the defendant's possession of multiple prescription medicines in a single container); *Vassiliou v. City of New York*, 18-CV-0779(EK)(VMS), 2021 WL 76916, at *7 (E.D.N.Y. Jan. 7, 2021) (affording qualified immunity against a § 1983 "false arrest" claim where the plaintiff was arrested for a "technical violation" of possessing a controlled substance under New York state law without the original pill bottle); *Garcia v. Escalante*, 678 Fed.Appx. 649, 656–57 (10th Cir. 2017) (reversing denial of qualified immunity where officers arrested plaintiff for possession of hydrocodone despite his presentation of a 13-month-old prescription, because no clearly established law made the arrest unlawful under the Fourth Amendment); *Budget Charters, Inc. v. Pitts*, No. 3:17-cv-722, 2018 WL 6181345, at *12–13 (M.D. Tenn. Nov. 27, 2018) (finding qualified immunity appropriate where arrest for possession of hydrocodone was supported by circumstantial evidence,

including crushed pills and unmarked containers, and where no clearly established law prohibited arrest under those circumstances).

### 2.    Louisiana law places the burden of proving a valid prescription on the defendant.

The district court found that Detective Wallace should have taken Brown at her word that she had valid prescriptions for the assortment of medicine she was holding. ROA.950–51. The court relied on one case to support its conclusion, *State v. Ruth*, a Louisiana Fourth Circuit decision in a criminal appeal. 2013-1547 (La. App. 4 Cir. 8/6/14), 147 So.3d 1177. As explained below, that case does not require an officer like Wallace to accept a suspect's self-serving statement about lawful possession of controlled substances, particularly in the absence of documentary proof, and especially not at the roadside. Far from condemning Wallace's actions, *Ruth* supports the conclusion that he had probable cause to arrest Brown.

Under Louisiana law, a person claiming lawful possession of a controlled substance must produce "sufficient proof" of a valid prescription. Louisiana law criminalizes the possession of a controlled dangerous substance without a valid prescription, regardless of whether the substance is classified in Schedule II, III, or IV. Under each of the relevant statutes, "[i]t is unlawful for any person knowingly or intentionally to possess a controlled dangerous

substance classified in Schedule [II, III, or IV] unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner." La. R.S. 49:967(C) (Schedule II); La. R.S. 49:968(C) (Schedule III); La. R.S. 49:969(C) (Schedule IV). It is also a crime to possess "any firearm … while unlawfully in the possession of a controlled dangerous substance." La. R.S. 14:95(E). Additionally, Louisiana law criminalizes the possession of a legend drug "except upon the order or prescription of a physician or licensed health care practitioner." La. R.S. 40:1060.13.

The case cited by the district court, *Ruth*, involved a Schedule IV drug.[8] In *Ruth*, the court affirmed the grant of a motion to quash, which dismissed a prosecution for the unlawful possession of Xanax. The arrest at issue in *Ruth* occurred when an officer observed the defendant illegally parked with several pills in plain view. "Although [the defendant] advised the officers that he had been prescribed the medication, he was arrested for illegal possession because he was not able to produce the prescription or the prescription-labeled container on the scene." *Id.* at 1178. In dismissing the prosecution, the *Ruth*

---

[8]   According to the DEA, Schedule IV drugs are characterized by a low potential for abuse and low risk of dependence. Some examples of Schedule IV drugs are Xanax, Soma, Darvon, Darvocet, Valium, Ativan, Talwin, Ambien, and Tramadol. https://www.dea.gov/drug-information/drug-scheduling (accessed 23 April 2024). Louisiana has adopted a parallel scheduling regime. La. R.S. 40:963.

court affirmed that when considering a motion to quash, "La. R.S. 40:991 should not be read to restrict the sources of evidence a defendant may use to establish that he possessed a validly issued prescription." *Id.* at 1779.

But *Ruth* does not support the notion that officers must accept a suspect's unverified explanation at face value, particularly when confronted with mixed prescription pills and no documentation. The court in *Ruth* never questioned the legality of the arrest, nor did it suggest that the officers lacked probable cause to arrest the defendant under La. R.S. 40:969(C). Rather, *Ruth* stands for the narrow proposition that a prosecution for *unlawful* possession should not proceed if the defendant is later able to establish *lawful* possession, and that courts may consider a broader range of evidence when deciding a motion to quash. *Id.* at 1180. The court made it clear that a charge cannot rest solely on a suspect's inability to produce a prescription at the time of arrest, if they are able to produce it later. *Ruth* recognized that "the law anticipates that a defendant will have the opportunity to produce sufficient evidence at a later date, prior to trial." *Id.* at 1180 (citing La. R.S. 40:991(C)).

The fact that Brown was later able to show she had valid prescriptions does not retroactively invalidate her arrest. Louisiana law treats a valid prescription as an affirmative defense to a possession charge, not a bar to arrest. More than 35 years ago, this Court recognized that reality in *Woods v.*

*Butler*, 847 F.2d 1163, 1168 (5th Cir. 1988), confirming that the burden of proving lawful possession rests with the defendant in a criminal prosecution. Louisiana courts have repeatedly followed suit. See *State v. Rodriguez*, 554 So.2d 269, 270 (La. App. 3d Cir. 1989), *writ granted in part, denied in part on other grounds*, 558 So.2d 595 (La. 1990); *State v. Hilsher*, 2011-1981 (La. App. 1 Cir. 5/2/12), 2012 WL 1552269 (unpublished); *State v. Williams*, 2012-0110 (La. App. 4 Cir. 10/10/12), 101 So.3d 533, *writ denied*, 2012-2423 (La. 4/19/13), 111 So.3d 1029. Under this settled framework, an officer is not required to accept a suspect's unverified claim of a prescription at the scene. Probable cause turns on what the officer knew at the time, not what the defendant might later prove in court.

Like *Ruth*, the decisions in *Woods*, *Rodriguez*, *Hilsher*, and *Williams* undermine Brown's argument that Wallace was required to prove the absence of a valid prescription before arresting her for possession. When Wallace told Brown that "a judge would sort it out," he accurately relayed the spirit, if not the letter of the law. ROA.672 [¶ 21]. Indeed, that's exactly what happened in *Ruth*.

Brown's allegation that she possessed assorted prescription medications without prescription documentation or original pharmacy labels justified her arrest. The only case cited by the district court actually supports the conclusion

that Wallace had probable cause to arrest Brown. Because her Fourth Amendment rights against an unlawful seizure were not violated when she was arrested, Wallace is entitled to qualified immunity.

### B.    No precedent clearly establishes that an arrest under these circumstances is unconstitutional.

To defeat qualified immunity, Brown must show that clearly established law prohibited Wallace from arresting her under the circumstances alleged. A legal rule is clearly established only if it is "settled law," meaning it is dictated by controlling authority or a robust consensus of persuasive decisions. *Wesby*, 583 U.S. at 63.

It is not enough that precedent suggests a rule; the law must be clear enough that every reasonable officer would interpret it to prohibit the conduct in question. *Id*. That requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curium). In weighing this question, the Court's focus is on whether existing precedent "placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

This standard is particularly exacting in the Fourth Amendment context, where probable cause depends on the totality of circumstances. *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Because probable cause is a fact-specific, case-by-case inquiry, officers must often make difficult judgments in fluid

situations. As the Court emphasized in *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014), courts must not define rights "at a high level of generality," especially where the lawfulness of an arrest depends on a nuanced factual assessment. See also *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) ("The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.").

Thus, to clearly establish a right in this setting, there must be precedent, ideally from the Supreme Court or this circuit, holding that an officer violated the Fourth Amendment under materially similar facts. *White v. Pauly*, 580 U.S. 73, 79 (2017). While a prior case need not be directly on point, the legal contours must have been defined with such clarity that no reasonable officer could have believed the arrest was lawful. *al-Kidd*, 563 U.S. at 741.

### 1.    There is no controlling case prohibiting an arrest under similar facts.

There are no Fifth Circuit or Supreme Court precedents holding that an arrest under these circumstances is unconstitutional. The plaintiff's opposition at the district court cited no jurisprudence, much less binding Fifth Circuit or Supreme Court precedent, prohibiting a police officer from arresting someone for possessing multiple prescription drugs mixed in a single container without

the original prescription-labeled bottles or other proof of a valid prescription on hand.  ROA.773–77.

And in denying Wallace's motion, the district court cited no Fifth Circuit or Supreme Court precedent prohibiting such an arrest. Although it clearly disapproved of Wallace's actions, the only case discussed, *Ruth*, was a state intermediate appellate court decision that addressed a different issue that arose at a much later stage of the criminal proceeding – what evidence can be considered on a motion to quash a bill of information.

### 2.    There is no robust consensus of persuasive authority holding otherwise.

Just because there is no binding authority that would prohibit Detective Wallace from arresting Brown for possession, he may still be liable if there is a robust consensus of persuasive authority. In this regard, this Court "may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority." *Hicks v. LeBlanc*, 81 F.4th 497, 503–04 (5th Cir. 2023). Ultimately, the touchstone is "fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.* (citing *Kinney v. Weaver*, 367 F.3d 337, 350 (5th

Cir. 2004) (en banc)). In other words, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his [or her] conduct was unlawful in the situation he [or she] confronted." *Id.* But where the law is uncertain or the facts present a close call, qualified immunity applies to shield the officer from liability. *Presley v. City of Benbrook*, 4 F.3d 405, 409 (5th Cir. 1993).

Brown identified no authority suggesting that Wallace violated clearly established law, and the district court cited only one case: *Ruth*. But a single case cannot establish a "robust consensus" of persuasive authority. See *Wilson v. Layne*, 526 U.S. 603, 616 (1999) (declining to find clearly established law in the absence of a significant body of national case law). Without more, *Ruth* offers no fair warning to officers like Wallace that making an arrest under these circumstances would violate the Fourth Amendment. In any event, *Ruth* did not question the legality of the arrest; it concerned the sufficiency of a later prosecution and stands only for the proposition that a defendant may offer post-arrest evidence of a prescription as a defense to the charge, not that the arrest itself was unconstitutional.

To the contrary, courts have consistently upheld arrests under comparable circumstances. When officers observe pills, reasonably believe they are controlled substances, and have reason to suspect the individual lacks

a valid prescription, probable cause supports the arrest. *See State v. Collins*, 97-2425 (La. App. 4 Cir. 10/21/1998), 721 So.2d 503, 506 (finding probable cause where the officer believed the pills were Valium and that the defendant had no prescription); *cf. United States v. Richardson*, No. CR 16-68-JJB-EWD, 2017 WL 1416816, at *5 (M.D. La. Apr. 19, 2017)(finding no probable cause because the officer was unsure whether pills he observed were controlled substances.)

The Fifth Circuit reached a similar conclusion in *Thorn v. McGary*, 684 Fed. Appx. 430, 434 (5th Cir. 2017). There, officers arrested the plaintiff during a traffic stop after finding a bottle containing Xanax. The plaintiff could not produce a prescription. Although prosecutors declined to pursue charges, the Fifth Circuit held that the officers were entitled to qualified immunity when his arrest was challenged. The court emphasized that the plaintiff's inability to produce a valid prescription at the scene supported a reasonable belief that he violated Louisiana Revised Statutes § 40:969.

The same rationale applies here. Brown admits that she possessed various prescription pills, some mixed in a single container, and she did not have original prescription bottles or documentation. She also had a semiautomatic pistol in the same purse. Probable cause exists when, under the totality of the circumstances, a reasonable officer could conclude that a suspect

was committing a criminal offense. The facts alleged in the SAC support a reasonable belief that she unlawfully possessed controlled substances.

In short, Brown's allegations describe an arrest supported by probable cause. She cites no controlling precedent that would have put Wallace on notice that her arrest violated the Fourth Amendment, and the district court relied on only one case, *Ruth*, which cannot establish a robust consensus of persuasive authority. Because the law did not clearly prohibit the arrest under the facts alleged, Wallace is entitled to qualified immunity on Brown's unlawful seizure claim.

## III.    Brown was lawfully in custody when the search occurred, and no clearly established law prohibited Wallace from ordering it.

The complaint does not plausibly allege that Detective Wallace violated clearly established law by directing a post-arrest strip search conducted by another officer.

### A.    Brown's own allegations confirm she was under arrest and in full custodial detention.

The complaint makes clear that Brown was already under arrest and in full custodial detention at the time of the search. Under Louisiana law, an arrest occurs when a person is taken into custody and subjected to actual restraint. *See* La. C.Cr.P. art. 201. According to the complaint, Brown was

handcuffed, transported to a BRPD facility, and held there for several hours before the search occurred. ROA.672–73 [¶¶ 23, 28]. These facts place her well beyond the scope of an investigatory stop.

Although Brown now attempts to frame the strip search as part of a *Terry* stop, that characterization contradicts her own pleadings. She alleges that officers arrested her and transported her to a police station for processing. ROA.672 [¶ 23]. The search took place only after her arrival and extended detention at the facility. ROA.673 [¶¶ 27–31]. This was not a brief roadside frisk as in *Minnesota v. Dickerson*, 508 U.S. 366 (1993); it was a post-arrest search in a secure custodial environment. The *Terry* standard does not apply.

Once a person is lawfully arrested and placed in custody, the Fourth Amendment permits broader searches for institutional safety and contraband prevention. In *Florence v. Board of Chosen Freeholders*, 566 U.S. 318 (2012), the Supreme Court held that visual strip searches of arrestees entering general jail population may be conducted without individualized suspicion. Courts have applied *Florence* more broadly to custodial settings outside of formal jail intake, particularly when the person is arrested on drug charges and detained in secure facilities.

Brown was not briefly detained in a patrol car or paddy wagon, nor was she strip-searched in the field. She was fully arrested, transported, and held at

a BRPD facility before the search occurred. ROA.672–73 [¶¶ 23, 27–31]. The Fifth Circuit has applied *Florence* to uphold strip searches in similar settings. In *Mabry v. Lee County*, 849 F.3d 232, 239 (5th Cir. 2017), the court upheld a visual search of a juvenile detainee during custodial intake, emphasizing that once a person is placed in custody, the burden shifts to the plaintiff to show that the search was irrational or excessive.

The same principle applies here. Like the juvenile in *Mabry*, Brown was in custodial detention at a secure facility. Her suspected offense, involving illegal possession of prescription drugs, provided a rational basis for concern about concealment and justified a visual search.

### B.   Instructing another officer to conduct a strip search in custody does not violate clearly established law.

Brown initially alleged that Detective Wallace personally participated in the strip search. However, her complaint later clarifies that Officer Alvarado, a female officer, conducted the search at Wallace's request. ROA.673 [¶¶ 30–31]; ROA.703–04 [¶ 176]. This more specific allegation controls. Brown does not claim that Wallace physically conducted the search or was present during it, only that he directed it.

Brown's allegation presents a narrow question: whether a male officer violates clearly established law by instructing a female officer to conduct a

visual strip search of a female suspect who is in custody following a lawful arrest. Under governing precedent, the answer is no.

Purported supervisory status alone is not enough to state a claim under § 1983, and an officer may be held liable for directing or authorizing unconstitutional conduct only if the underlying act itself was unconstitutional under clearly established law. See *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008); *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998).

As explained above, Brown was lawfully arrested, held in custody, and then searched in a secure BRPD facility. Under *Florence* and *Mabry*, visual strip searches in custodial settings do not require individualized suspicion. In that context, the burden shifts to the plaintiff to show that the search was irrational or excessive, something Brown has not done because she has wrongly assumed she was not under arrest.

At the time of the search, there was no binding authority (nor consensus among other circuits) clearly prohibiting an officer from ordering a visual search of a drug arrestee in custody. Because the search itself did not violate clearly established law, Wallace's instruction to carry it out does not support § 1983 liability. He is entitled to qualified immunity.

### C.    Courts have upheld similar searches under *Florence*, and no precedent clearly prohibits this one.

*Florence* permits visual strip searches of arrestees entering custodial settings without individualized suspicion. Brown's allegations fall squarely within that rule. She was arrested for illegal possession of prescription pills, transported to a BRPD facility, and searched by a female officer. Nothing about this sequence removes her case from *Florence's* reach.

There is no Supreme Court or Fifth Circuit decision holding that a visual strip search in these circumstances – post-arrest, in custody, and unrelated to field detention – violates the Fourth Amendment. Nor is there any robust consensus among other circuits suggesting that such searches are clearly unlawful.

The nature and seriousness of the underlying offense also matter. Regardless of the specific medication, Brown's alleged conduct – to wit, possessing multiple unlabeled prescription pills without documentation, commingled in a single container, and carried in a purse alongside a firearm – was far from minor. Louisiana law treats unauthorized possession of controlled substances as a felony across Schedules II, III, and IV. See La. R.S. 40:967(C), 968(C), 969(B). Each offense carries a penalty of up to ten years at hard labor and a substantial fine. The presence of a firearm in connection

with unlawful drug possession elevates the offense further, exposing the individual to additional penalties under La. R.S. 14:95(E). In this context, Brown's arrest was for a serious drug and weapons offense, precisely the type of circumstance where custodial searches are most justified.

Courts have long recognized that narcotics are easily concealed and often hidden close to the body, heightening the justification for visual inspections in custodial settings. See *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 390 (2009) (Thomas, J., concurring in part and dissenting in part).[9] In this context, a visual search following Brown's custodial arrest was reasonable, lawful, and appropriate.

Federal appellate courts applying *Florence* have upheld comparable, and often more intrusive, searches following custodial arrests for drug offenses. In *Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013), the Second Circuit granted qualified immunity to officers who conducted a visual body <u>cavity</u> search of a felony drug arrestee at a police station. Even though that search involved observing the suspect's rectum and ultimately discovering

---

[9]    In *Redding*, the Court held that a school official violated a student's Fourth Amendment rights by conducting a search of her underwear for non-prescription painkillers. Justice Thomas concurred in part and dissented in part, observing that the student "would not have been the first person to conceal pills in her undergarments." He cited several contemporary news reports involving arrestees found with pills hidden in the crotch area.

concealed narcotics, when subsequently challenged in a § 1983 action, the court concluded that no clearly established law prohibited such a search in the context of a felony drug arrest.[10] The court emphasized that *Florence* is not limited to jail intake and reaffirmed that drug crimes, due to their inherent risk of concealed contraband, justify broader custodial search authority. If a visual cavity search in *Gonzalez* did not violate clearly established law, then the far less intrusive visual strip search at issue here – conducted post-arrest, in a controlled setting, and without any physical intrusion – easily passes constitutional muster. The justification is even stronger given the presence of a firearm and multiple unlabeled prescription medications, which raised a clear risk of concealment and potential harm. See also *United States v. Barnes*, 506 F.3d 58, 63 (1st Cir. 2007) (upholding a visual cavity search based on suspected drug activity and emphasizing the government's interest in preventing contraband in custodial environments).

Brown was arrested for possessing several pills in a mixed container, with no prescription documentation, and carrying those pills in the same purse

---

[10]    The plaintiff in *Gonzalez* was arrested for offering to procure drugs, subjected to a visual body cavity search at the police station, and convicted after officers discovered a baggie of crack cocaine protruding from his rectum. Although the conviction was later reversed under state law, the Second Circuit held in his § 1983 suit that the officers were entitled to qualified immunity because no clearly established federal law prohibited such a search in the context of a felony drug arrest. 728 F.3d at 154–61.

as a firearm. Even under an individualized suspicion standard (a dubious proposition since *Florence*), those facts justified a search.

But even if the search were ultimately deemed unconstitutional, Wallace would still be entitled to qualified immunity. To overcome that defense, Brown must show that the unlawfulness of the search was "beyond debate." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *al-Kidd*, 563 U.S at 741. She has not identified any binding precedent or persuasive authority clearly establishing that a visual search, under these circumstances, violates the Fourth Amendment. In the absence of such guidance, the law remains unsettled, and qualified immunity applies.

## <u>CONCLUSION</u>

The district court erred in denying Detective Wallace's motion to dismiss. The complaint fails to allege a violation of clearly established law as to either the seizure or the search. For the foregoing reasons, Wallace respectfully requests that this Court reverse the district court's order denying his motion to dismiss and render judgment dismissing all claims against him on the basis of qualified immunity.

Respectfully submitted:

**BABCOCK PARTNERS, LLC**

**/s/ Chase Tettleton**

_____

**Chase Tettleton** (32721)
**Stephen Babcock** (26792)
10101 Siegen Lane, Bldg. 3C
Baton Rouge, LA  70810
(225) 344-0911
(225) 761-9088 (fax)
*ct@stephenbabcock.com*
ATTORNEYS FOR MATTHEW WALLACE

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the *Brief of Appellant, Matthew Wallace* has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on July 25, 2025, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

/s/ Chase Tettleton

_____

**Chase Tettleton** (32721)
**Babcock Partners, llc**
Attorneys for Matthew Wallace

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1. This document contains 6,664 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

> this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO with a 14-point font named Sabon LT.

**/s/ Chase Tettleton**
_____
**Chase Tettleton** (32721)
**Babcock Partners, llc**
Attorneys for Matthew Wallace